Case No.  11-8000

# United States Court of Appeals
# for the Tenth Circuit

AECOM – Appellant,

v.

Centennial Archaeology, Inc. – Appellee,

On Appeal From the United States District Court
For the District of Wyoming
Case No. 09-CV-101-B
The Honorable Judge William F. Downes

BRIEF OF DEFENDANT-APPELLANT,
AECOM, INC.

**ORAL ARGUMENT IS REQUESTED**

**THE RICHARD LAW FIRM, P.C.**
Andrea Richard
Attorney for the Appellant –AECOM
199 E. Pearl Ave., Suite 102
P.O. Box 1245
 Jackson, WY 83001
(307) 732-6680
andrea@arichardlaw.com

## CORPORATE DISCLOSURE STATEMENT

AECOM is a publicly traded company and trades on the New York Stock Exchange  (NYSE) under the symbol "ACM".  Fed. R. App. P. Rule 26.1.

## STATEMENT REGARDING PRIOR OR RELATED APPEALS

AECOM initially appealed from the jury verdict and Judgment entered by the District Court.[1]  The parties have settled that appeal and this appeal relates solely to the post- Judgment sanctions of $58,361.51 entered by Judge Downes. Other than these two appeals, there are no related appeals.

---

[1] References to the appendix are by page number, e.g. Aplt. App. at 27.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ................................................................. 1
STATEMENT REGARDING PRIOR OR RELATED APPEALS ............................... 1
TABLE OF CONTENTS.............................................................................................. 2
TABLE OF AUTHORITIES ....................................................................................... 3
JURISDICTIONAL STATEMENT ............................................................................ 5
I.    STATEMENT OF THE CASE .......................................................................... 6
II.   STATEMENT OF ISSUES ............................................................................. 13
1.    THE DISTRICT COURT ABUSED ITS DISCRETION BY IMPOSING, IN EFFECT, A CRIMINAL CONTEMPT SANCTION OF $58,361.51 WITHOUT A HEARING.................. 15
2.    THE DISTRICT COURT'S PRE-DISPOSTION TO IMPOSE SANCTIONS, IN PART, BECAUSE APPELLANT SOUGHT TO CONTINUE THE TRIAL SETTING WAS CLEARLY ERRONEOUS AND BORN OF ILL WILL WHICH IS ASCERTAINABLE FROM THE RECORD ........................................................................................................................ 21
3.    THE DISTRICT COURT'S DECISION TO AWARD SANCTIONS OF $58, 361.51 BASED IN PART ON AECOM'S LISTING A PORTION OF ITS INTERNAL E-MAIL CORRESPONDENCE WRITTEN AFTER THE DISPUTE AROSE ON ITS PRIVLEGE LOG WAS MANIFESTLY UNREASONABLE AND AN ABUSE OF DISCRETION .................... 24
4.    THE DISTRICT COURT'S AWARD OF DOUBLE SANCTIONS WAS ARBITRARY AND CAPRICOUS BY IMPOSING MONETARY SANCTIONS AFTER IMPOSING EVIDENTIARY SANCTIONS ...................................................................................... 29
5.    THE DISTRICT COURT'S DECISION TO AWARD A SANCTION OF $58,361.51 IN ATTORNEY'S FEES, BASED ON COURSE OF CONDUCT DISCOVERY AND A PORTION OF MARK DEGNER'S NOTES WAS CLEARLY ERRONEOUS............................................ 32
6.    THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT AWARDED ATTORNEYS FEES THAT WERE NON-COMPENSATORY AND ATTORNEY'S FEES THAT APPELLEE HAD NOT INCURRED UNDER ITS FIXED FEE AGREEMENT .......... 38
CONCLUSION............................................................................................................ 39
ORAL ARGUMENT STATEMENT ......................................................................... 40
CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)(7)(B)................................. 41
CERTIFICATE OF SERVICE ................................................................................... 42

# TABLE OF AUTHORITIES

## Cases

*Alabama v. Abott Laboratories, Inc* ................................................................ 25

*Attorney General of Oklahoma v. Tyson Foods Inc.*, ........................................ 15

*Bagwell* ............................................................................................................ 18

*Brigham Young University v. Pfizer, Inc.*, 262 F.R.D. (D. Utah 2009) ........ 36, 37

*Butter v. Benson* .............................................................................................. 33

*Continental Industries, Inc. v. Integrated Logistics*, ....................................... 33

*Davey v. Lockheed Martin Corp* ...................................................................... 22

*Davis v. Mineta* ............................................................................................... 15

*Dixon v. Comm'r* ............................................................................................. 38

*Dodd Insur. Services Inc. v. Royal Insur. Company of America* ..................... 38

*Dominion Video Satellite Inc. v. Echostar Satellite LLC* ............................... 14

*Haigh v. Matsushita Elec. Corp. of America*, 676 F.Supp. (E.D. Va. 1987) ..... 29

*Hascock v. Navtar International Transp. Corp* ................................................ 19

*Hicks* ............................................................................................................... 18

*Ilardi v. Domestic Violence Intervention Services, Inc.*, 2010 WL 830272 (N.D. Okla. 2010) ........................................................................................................ 29

*JOM, Inc. v. Adell Plastics, Inc* ...................................................................... 33

*Jones v. Young* ................................................................................................ 22

*Kaufman v. American Family Mut. Ins. Co.*, .................................................. 14

*Laney ex rel., Laney v. Schneider Nat. Carriers Inc.*, 259 F.R.D. (N.D. Okla 2009) ....... 28

*Law v. Collegiate Athletic Ass'n* ..................................................................... 20

*Law v. National Collegiate Athletic Ass'n* ...................................................... 18

*Lobato v. Ford* ................................................................................................. 33

*Media Duplication Servs., Ltd. v. HDG Software, Inc* .................................... 19

*Mellon v. Cessna Aircraft Co* .......................................................................... 21

*Mellon v. Cessna Aircraft Co.*, ....................................................................... 21

*Naviant Marketing Solutions*, ......................................................................... 39

*Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc* ................................ 39

*NLRB v. Local 825 International Union of Operating Engineers*, .................. 20

*Ocelot Oil Corporation v. Sparrow Industries*, 847 F. 2d (10th Cir. 1988) ..... 37

*Oil v. Sparrow Industries*, 847 F. 2d (10th Cir. 1988) .................................... 37

*Parkehurst v. U.S. Department of Education* .................................................. 21

*Pelican Production Corp* ................................................................................. 15

*Pelican Production Corp. v. Marino*, ............................................................... 15

*Pereira v. Narragansett Machine Corp.*, ......................................................... 19

*Proctor and Gamble Company v. Haugen*, 427 F. 3d 727, 738 (10th Cir. 2005) ............. 37

Rule 37(b); Fed. R. Civ ................................................................................... 29

_Satcorp Int'l Group v. China National Sales Import and Export Corrp._ ..........................19
_Simon v. Ford Motor Company_, 165 F.R.D. (N.D. Oklahoma 1995) ..............................37
_U.S. v. Lujan_, ................................................................................................14
_United Mine Workers_ .......................................................................................18

**Other Authorities**

_Aiken v. Texas Farm Bureau Mutual Insurance Co._, 151 F.R.D. (E.D. Tex. 1993) .........24

**Rules**

Fed. R. Civ. P. 37(b)(2) ...................................................................................41
Fed.R.Civ.P. 37(a)(5)(A) ..................................................................................48

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1).  Aplt. App. at 3 (Initial Pretrial Order, docket # 12).  The case was tried to a jury for five days in June, 2010 and the jury rendered its verdict on June 28, 2010. Aplt. App. at 18 (Minutes Jury Trial Completed, docket # 186).  The District Court entered its Judgment on the Jury Verdict on October 15, 2010.   Aplt. App. at 20 (Judgment, docket # 216).

On December 6th, 2010, the District Court entered its Order granting motion for sanctions and additional sanctions in the amount of $58,361.51.  Aplt. App. at 21, 1381.  A timely appeal to this Court followed. Aplt. App. at 21 (docket # 224); Fed. R. App. P. 4(a)(1)(A) and 4(a)(4).  This Court has jurisdiction under 28 U.S.C. § 1291, as this is an appeal from a final decision of the District Court.[2]

---

2. After AECOM filed a timely notice of appeal from the District Court's Order Awarding Sanctions, Centennial's counsel filed motions asking the District Court to enter a separate judgment on its order granting sanctions.  Aplt.  App. at 22,  docket # 233.  The District Court entered the separate judgment per Centennial's request.  Pursuant to Fed. R. App. P. 4, AECOM's timely notice of appeal is treated as filed on the date of entry of the Judgment.

## I.  STATEMENT OF THE CASE

This case concerns the limits of a District Judge's power to impose sanctions and the appropriate balance to be utilized in the exercise of that power.  The District Court awarded $58,361.51 as a monetary sanction.  AECOM asks this Court to reverse the District Court's order as an abuse of discretion and outside of the District Court's proper authority.

One imagines that appeals of attorney's fee awards and sanctions may not, at first blush, seem like the most glamorous appeals that come before this Court.  It might be tempting to think this is an appeal where the Court's considerable authority is not needed and a discussion on fees should just be left to the District Court.  This is not that case.  This is a case where the District Court ventured far from what could be justified by the record and far from was fair.  Appellant needs this Court's authority to get relief from an extreme order entered by the District Court.

## STATEMENT OF FACTS RELEVANT TO THE ISSUES PRESENTED FOR REVIEW

This case was a fairly standard construction/breach of contract case involving a wind farm in Southeastern Wyoming.  The wind farm was being built by Power Company of Wyoming and Centennial Archaeology was the subcontractor hired to do the archaeological survey required on public land included in the wind farm.  AECOM was

the environmental general contractor hired to supervise and manage the subcontractors on the project.

Centennial was given a purchase order with a fixed amount for the project of $674,900. Aplt. App. at 376, 1413. Centennial's contract provided "the consultant shall not proceed with any phase of work prior to the receipt of a written order describing such work and consultant's written acceptance of such order." Aplt. App. at 1125. On January 30, 2009, Centennial submitted a change order for the total amount of $608,689. Aplt. App. at 1139, 1414. The Owner, Power Company of Wyoming, and the BLM were upset and a stop work order was issued on February 11, 2009. Aplt. App. at 1139.

The case was not remarkable procedurally and proceeded predictably through summary judgment. Centennial filed its complaint on May 8, 2009. The discovery cutoff was December 18, 2009. Aplt. App. at 3 (Initial Pretrial Order, docket #12). This gave the parties over seven (7) months, or approximately 224 days, to conduct discovery. No discovery motions were filed during the discovery period. Aplt. App. at 1-4.

After the discovery deadline expired, Appellee Centennial moved for summary judgment. Aplt. App. at   On March 23, 2010, Judge Downes denied Centennial's Motion for Summary Judgment. Aplt. App. at 7, docket # 57. The parties proceeded with filing their pre-trial memos, witness lists and readied their cases for trial. The District Court conducted a final pre-trial conference on March 25, 2010, and entered its Final Pretrial Order on March 30, 2010. Aplt. App. at 375. Trial was scheduled for April 26, 2010.

Aplt.  App. at 10, docket number 91.

On April 29, 2010 this case began to change from standard construction litigation to something altogether different.  It was on this day that the District Court became irritated over setting the trial date.  Originally, the trial was supposed to start on April 26, 2010, but that date had to be vacated because of a criminal matter.   Aplt. App. at 474.

At the status conference on April 29, the District Court suggested new trial dates of June 22, 2010 or September 27, 2010.  Aplt. App. at 497.  Undersigned counsel responded that she had other trials on both suggested dates, including a June 22 trial setting in state District Court before The Honorable Judge Norman Young.  Judge Downes expressed his frustration said that he would contact Judge Young and see about the conflict with the June 22, 2010 trial date.  Aplt. App. at 497, 498.

Apparently after this status conference, Judge Downes did contact State District Court Judge Young, and confirmed that state District Court Civil No. 14557 was set for trial. Aplt. App. 497, 498.  Judge Downes requested that Judge Young move that trial setting which Judge Young did. Aplt. App. at 498.

During the status conference, Centennial said that it was contemplating adding new claims. Aplt. App. at 497.  The District Court told Centennial to amend quickly and that all parties would be prepared for trial.  Aplt. App. at 497.  Centennial's suggestion that it might add new claims was a month after the District Court's Final Pretrial Order of March 30, 2010, noting that no amendments were anticipated.  Aplt. App. at 383.

Two weeks later on May 14, 2010, Centennial filed a Motion to amend their complaint adding punitive damages and four new tort claims and seeking $800,000.00 more dollars in damages. Aplt. App. at 638.  (This was over one year after Centennial filed its original complaint and 147 days after the discovery period had closed).  Four days later AECOM filed an opposition to Centennial's Motion to Amend advising the District Court that AECOM could not fairly or effectively defend against the new tort claims (now seeking a total of approximately $1.1 million up from $320,493 that Centennial was seeking on the Contract) in the limited time before trial.  Aplt. App. at 691,703,1261.

Despite 's AECOM's opposition, the Magistrate entered an Order granting the Motion to Amend and requiring that AECOM answer the complaint within seven days or by May 27, 2010 and directing the parties to complete discovery by June 15, 2010. Aplt. App. at 12, docket # 111.  On May 27th, AECOM filed its answer to the new tort claims as directed by the Magistrate. Aplt. App. at 12, docket # 113.  On June 2, 2010, AECOM sought reconsideration of the Magistrate's Order allowing the amendment. Aplt. App. at 12, docket # 115.  AECOM also filed a Motion to continue the trial two days later on June 4, 2010. Aplt. App. at 862.   Trial was 10 business days away.  Before Centennial could even respond to that Motion, Judge Downes denied the Motion for reconsideration of the Motion to amend.  Aplt. App. at 12, docket # 121.

Centennial had been insisting that new discovery take place on an expedited basis

on its newly added tort claims and had noticed depositions and filed a motion to compel.

Aplt. App. at 12, docket # 122.  On June 5, 2010, AECOM objected to this expedited

schedule and filed motions for protective orders.  Aplt. App. at 13, docket #s 123-28.

**<u>Judge Downes Loses His Temper and Does Not Regain Neutrality</u>**

On June 7, 2010 the District Court provided notice that the next day it would be

conducting a hearing on AECOM's Motion to Continue the trial. Aplt. App. at 13, docket

# 131.  At this hearing it became evident how insistent the District Court was that the trial

setting of June 22 would hold regardless of the prejudice and Judge Downes' anger also

became evident:

> The Court:  "As I read this material last night I tell you…I tell you my blood
> pressure went up several notches…Ms. Richard, you're perilously close to being held in
> contempt by this Court.  Enough is enough.  I understand a stall tactic when I see it, and it
> won't be tolerated any longer.  My patience has run with you." Aplt. App. at 870-71.
>
> The Court:  "I mean this case has stretched the patience of the Court beyond its
> limits.  So, counsel you can file whatever motion you want to file, but we're going to
> trial." Aplt. App. at 875.
>
> The Court:  "Now I don't usually throw down the gauntlet to lawyers in this
> district, but I am throwing down the gauntlet now.  We are going to trial." Aplt. App. at
> 878.  The Court: You're going to trial.  I don't want to hear this anymore…. Counsel, if
> you say one more word and argument about it, I'll hold you in contempt." Aplt. App. at
> 881.
>
> The Court:  "This case is going to trial, and let the word go out to lawyers that
> when you test my patience in this fashion, there is hell to pay for it."  Aplt. App. at 884.

The next day, on June 9, 2010, Judge Downes signed an order compelling

AECOM to participate in depositions and answer written discovery and denied the

motions for protective order that AECOM had filed.  Aplt. App. at 14, docket number

138.  AECOM complied and two days later on June 11th AECOM filed a notice of

production of additional documents as well as a notice of the deposition schedule.  Aplt.

App. at 902, 909. On June 12, only three days after the Judge's order, AECOM filed its

notice of serving additional discovery responses. Aplt. App. at 909.

## Pretrial Order on Sanctions

By the time trial approached, Centennial's counsel had submitted four filings

attempting to have the District Court award it attorney's fees in the form of sanctions.

Aplt. App. at 8-16, docket #s 64 (failure to provide course of dealing discovery),#117

(failure to provide course of dealing discovery), #147 (late production of documents),

#153(reply in support).  Centennial had not filed any discovery motions or any request for

sanctions during the discovery period.  Aplt. App. at 2-4.  Centennial was motivated, in

part, by an effort to try to correct an attorney's fees problem that its counsel had made for

itself.  Centennial's counsel had agreed to fixed fee through trial of $61,000.00.  Aplt.

App. at 720.  By the end of the litigation Centennial's counsel had spent over

approximately $403,000.00.  Aplt. App. at 1348.  Centennial's counsel was working hard

to find a mechanism for righting the ship on its attorney fees problem.

The discovery issues that Centennial used to get fees in the form of sanctions have

been litigated extensively and are analyzed in the relevant sections of this brief.  The three

primary discovery issues were: 1) Discoverability of e-mail correspondence from

AECOM employees with AECOM's in-house counsel listed on AECOM's privilege log

(the Magistrate's April 12th Order Aplt. App. at 422); 2) Discoverability of "course of conduct" evidence from other projects that Centennial and AECOM had worked on together (the Magistrate's April 27th Order Aplt. App. at 478); 3) Centennial's claim that AECOM had produced a portion of project manager Mark Degner's handwritten notes late.  Aplt. App. at 939.

On the Friday before trial started, Judge Downes entered his order on Centennial's motions for sanctions. Aplt. App. at 1051.  Judge Downes denied the motion for sanctions in part and granted it in part.  Judge Downes limited the course of dealing evidence that AECOM could rely on at trial.  Aplt. App. at 1052.  The trial court denied Centennial's request to deem the requests for admissions admitted but indicated that AECOM's pattern of conduct was "an egregious violation of the rules governing discovery obligations" and that "the Court would fully consider the issues at the close of the evidence." Aplt. App. 1053.  The District Court did not consider Centennial's request for sanctions in the form of attorney's fees at the close of the evidence but did so approximately six months later.

## District Court Imposes $58,361.51 in Sanctions Six months After Trial

In August, Centennial filed a further motion for sanctions and requested additional attorney's fees. Aplt. App. at 18, docket # 195.  AECOM opposed Centennial's post-trial motion for sanctions pointing out, inter alia, that there had been no new discovery after the trial. Aplt. App. at 1286.  AECOM requested an evidentiary hearing on the motions

for sanctions.  Aplt. App. at 1377.

Judge Downes denied AECOM's request for hearing. Aplt. App. 20, docket # 214.  Ultimately, approximately six months after trial, the District Court entered its order granting Centennial's motion for sanctions and awarded fees in the amount of $40,100.00 on the motion for sanctions and $18,261.51 on the additional motion for sanctions for a total of $58,361.51.  Aplt. App. at 1381, 1404.

In awarding these attorney's fees sanctions, the District Court did not critically review the record, the law or the Magistrate's findings.  If the District Court would have carefully analyzed the record, the applicable law and the Magistrate Judge's findings, it would not have awarded sanctions.  Further, the District Court awarded fees that were not compensatory and fees that Centennial had not paid and had no obligation to pay.  For all these reasons, this Court should vacate the District Court's Order Awarding Sanctions of December 6, 2010.

## II. STATEMENT OF ISSUES

1.   DID THE DISTRICT COURT ERR IN AWARDING SANCTIONS IN THE FROM OF ATTORNEY'S FEES OF $58,361.51?
2.   DID THE DISTRICT COURT ERR IN DENYING DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING BEFORE AWARDING SUBSTANTIAL SANCTIONS?
3.   DID THE DISTRICT COURT ERR IN AWARDING SANCTIONS IN THE AMOUNT OF $58,361.51 BASED ON FACT CONCLUSIONS THAT WERE INCORRECT?
4.   DID THE DISTRICT COURT ERR BY AWARDING A DOUBLE SANCTION BY IMPOSING A MONETARY SANCTION ON TOP OF ALLOWING ARGUMENT ON THE DISCOVERY ISSUES TO THE JURY?

13

5.    DID THE DISTRICT COURT ERR BY IMPOSING SANCTIONS AS A PENALTY FOR APPEALING ORDERS OF THE MAGISTRATE?

6.    DID THE DISTRICT COURT ABUSE ITS DISCRETION IN AWARDING ATTORNEY'S FEES SANCTIONS OF $58,361.51 IN ATTORNEY'S FEES WHEN THERE WERE NO DISCOVERY MOTIONS DURING THE DISCOVERY PERIOD?

7.    DID THE DISTRICT COURT ERR IN IMPOSING SANCTIONS FOR DISCOVERY ISSUES THAT AROSE LARGELY DURING THE DISCOVERY PERIOD CONSISTING OF 18 DAYS AFTER THE FINAL PRETRIAL CONFERENCE AND BEFORE THE TRIAL ON BRAND NEW TORT CLAIMS?

8.    DID THE DISTRICT COURT ERR WHEN IT ALLOWED CENTENNIAL TO ADD CLAIMS AFTER THE FINAL PRETRIAL CONFERENCE AND THE FINAL PRETRIAL ORDER?

9.    DID THE DISTRICT COURT ERR IN IMPOSING ATTORNEY'S FEES OF $58,361.51 THAT WERE NOT ACTUALLY INCURRED BY CENTENNIAL?

10.   DID THE DISTRICT COURT ERR IN IMPOSING SANCTIONS ON  FOR TAKING A LEGITIMATE AND LEGALLY SUPPORTED POSITION ON THE DISCOVERABILITY OF PRIVILEGED E-MAIL CORRESPONDENCE?

11.   WAS THE DISTRICT COURT'S CONCLUSION THAT APPELLANT VIOLATED COURT ORDERS AND AWARD OF FEES ON THAT BASIS ERRONEOUS.


## STANDARD OF REVIEW

The District Court's decision to impose sanctions is reviewed only for abuse of discretion. *Dominion Video Satellite Inc. v. Echostar Satellite LLC*, 430 F.3d 1269 (10th Cir. 2005); *Kaufman v. American Family Mut. Ins. Co.*, 601 F.3d 1088, 1092 (10th Cir. 2010).

A District Court abuses its discretion when it renders a judgment that is arbitrary, capricious or manifestly unreasonable.  *U.S. v. Lujan*, 603 F.3d 850, 860, (10th Cir.

14

(2010) (Henry, Chief Judge dissenting) (quoting *United States v. Sells*, 541 F.3d 1227, 1237, (10th Cir. 2008) *cert. denied* 129 U.S. 1391 (2009)).  Evidence of abuse of discretion be "unreasonable judgment, prejudice, bias or ill will which is ascertainable from the record."  *Pelican Production Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990).

The Tenth Circuit can find an abuse of discretion where a District Court commits a legal error or relies on clearly erroneous factual findings or where there is no rational basis in the evidence for its ruling.  *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002).  In the Tenth Circuit's review for abuse of discretion, the Court examines the District Court's legal determinations de novo, in its underlying factual findings for clear error.  *Attorney General of Oklahoma v. Tyson Foods Inc*., 565 F.3d 769, 775 (10th Cir. 2009).  A finding of fact is clearly erroneous when, even though it has evidence to support it, a reviewing Court after considering all the evidence is left with a definite and firm conviction that a mistake is being committed.  *Pelican Production Corp.*, 893 F.2d at 1148.

## **ARGUMENT**

### 1.  **THE DISTRICT COURT ABUSED ITS DISCRETION BY IMPOSING, IN EFFECT, A CRIMINAL CONTEMPT SANCTION OF $58,361.51 WITHOUT A HEARING**

The District Court styled the sanctions it imposed in this case as Rule 37 sanctions.  Aplt. App. at 1397.  However, upon examination of the record, the District Court's

comments make clear that the District Court did, essentially, impose sanctions that were criminal contempt in nature.

During the hearing on June 8, 2010, the District Court made its anger and its decision to impose some sort of penalty clear:

> "**The Court**: [first words of the hearing after case is identified] Let me take one issue off the table right now.  The motion for continuance is denied.  We are going to trial, no ifs, ands or buts about it.  Everybody understand?"  Aplt. App. at 870.
>
> ***
>
> "**The Court**:  Counsel, you will have to be prepared for trial.  You will have to be prepared.  And, frankly, as I read this material last night over a glass of milk, it was not a good way – not a good way to end the day's proceedings.  I had a hard day yesterday, and I tell you my blood pressure went up several notches when I read this stuff last night.  This practice is going to stop**.  Ms. Richard, you're perilously close to being held in contempt by this Court.**  Enough is enough.  I understand a stall tactic when I see it, and it won't be tolerated any longer.  My patience has run with you.  Now, I don't know what you have to do, bring in a cohort of lawyers to assist you, whatever you have to do, but you will be prepared; and if you're not prepared, I will dismiss your – any defenses that you may have with respect to the plaintiff's cause of action."  Id. at 870-71.
>
> ***
>
> "**The Court:** You can put that aside. (Reference to motion for summary judgment on new tort claims)  You should talk to the Magistrate judge.  I mean, this case has stretched the patience of the Court beyond its limits.  So, counsel, you can file whatever motion you want to file, but we're going to trial, and I'll attempt to rule on it on the eve of trial if I have to, but I'm… confident there'll be issues to go to trial, and we're going to trial."  Aplt. App. at 875.
>
> ***
>
> "**The Court**: Now, I don't usually throw down the gauntlet to lawyers in this district, but I am throwing down the gauntlet now. We are going to trial.
>
> **Mr. Richard**:  I understand, Your Honor, and I – and I – please note, from the bottom of my heart, that my request in this matter and these motions (are) not to stall.  It's not to disrespect the Court.  It is borne of a genuine

and sincere belief that we cannot represent the client adequately under these circumstances with this late of an amendment and –

**The Court**:  I don't – I don't buy that, counsel, and I don't think the record does, and you're going to trial.  So there's really no more point in talking about what you would like to do.  We are going to trial." Aplt. App. at 878.

\*\*\*

"**The Court**:  Counsel, I've already made my decision.  You're still arguing with me.  Now, you get away with this in a state Courthouse, but you don't get away with it in a federal Courthouse.  The answer is:  You're going to trial.  I don't want to hear this anymore. …**Counsel, if you say one more word in argument about it, I'll hold you in contempt**." Aplt. App. at 881.

\*\*\*

"**The Court**:  Well, of course, one of the problems is Mrs. Richard has developed a disturbing habit of not returning phone calls.

**Ms. Richard**: Your Honor, may I speak to that? Would you like me to or not?

**The Court**:  No counsel, I really don't.  I – I don't think there's much other productive conversation we can have on this subject.  I am very offended by the status of this case.  And – and, frankly, **your conduct is perilously close to being sanctionable**, and I'm very disappointed because a lawyer of your intellect – I have every right to expect more, and you are not living up to your expectations and that angers me.  Now I don't know what's going on in your life, but things better change when you practice in my Courthouse.  This may be tolerated somewhere else, but it will not be tolerated in front of me.

**Ms. Richard**:  And, Your Honor, if I might?

**The Court**: At your peril.

**Ms. Richard**:  Judge, all I would say to you is that I think the record is – that the plaintiffs are creating about this is not accurate.

**The Court**: Well, I – you know, you've lost that battle, and your credibility is really at issue with me, and that's a very sad thing to have to say to any lawyer in this district, but that's where you are, Ms. Richard, and it's a very sad thing.  It grieves me to have to say it, but there you are.  **This case is going to trial, and let the word go out to lawyers that when you test my patience in this fashion, there is hell to pay for it."** Aplt. App. at 883-84 (emphasis added).

The comments in the record demonstrate that the District Court was intent on

imposing a penalty.  Although the District Court did not impose sanctions on that day, the

17

sanctions the District Court imposed were in effect a criminal contempt sanction. .  *Law v. National Collegiate Athletic Ass'n,* 134 F.3d 1438,1440-41 (10th Cir. 1998).  The timing and nature of the fine ultimately imposed, together demonstrate that the District Court did indeed impose criminal contempt like sanctions.

### Nature of the Penalty Imposed—Amounts Beyond Compensation Permitted by Rule 37

The language of Judge Downes' Order Imposing Sanctions references Rule 37. Aplt. App. at 1397.  However, the only monetary sanctions authorized by Rule 37(b)(2), absent contempt, are the compensatory sanctions authorized by its final paragraph.  The District Court awarded attorney's fees that were not limited to compensatory amounts designed to compensate Centennial for spending fees to get information.  For example, the District Court awarded fees for Centennial's counsel counsel sending e-mails to their client regarding the pre-trial memos, Aplt. App. at 796; reviewing additional discovery provided by AECOM, Aplt. App. at 802; working on Centennial's new tort claims, Aplt. App. 813.  A fine payable to a complainant must of course be based on evidence of the complainant's actual loss and the critical feature of civil contempt is that the punishment is remedial.  *Law v. National Collegiate Athletic Ass'n,* 134 F.3d at 1443(citing *United Mine Workers,* 330 U.S. at 304, 67 S. Ct. at 701; *Hicks* 485 U.S. at 631, 108 S. Ct at 1429).  *See also, Bagwell* 512 U.S. at 833, 114 S. Ct. at 2560; *Yanish  v. Barber* 232 F.2d 939-44 (9th Cir. 1956)(Civil fine cannot exceed actual loss to complainant).

In this case, the District Court awarded amounts that were not compensatory and

therefore the District Court must have imposed that sanction based upon the contempt finding under Rule 37(b)(2)(d).  The District Court's comments above also demonstrate that the sanctions awarded were in the nature of criminal contempt.

There is a split in authority on the question of whether a District Court can order non-compensatory sanctions under Rule 37 without a finding of contempt.  _Satcorp Int'l Group v. China National Sales Import and Export Corrp.,_ 101 F3d 3, 5 (2d Cir. 1996). The Fourth Circuit has held that a Rule 37 fine is effectively a criminal contempt sanction requiring notice and the opportunity to be heard.  _Hascock v. Navtar International Transp. Corp.,_ 53 F3d 36, 42 (4th Cir. 1995).   Similarly the Third Circuit has held that absent contempt, the only monetary sanctions Rule 37 authorizes are reasonable expenses resulting from the failure to comply with discovery.  _Law v. National Collegiate Athletic Ass'n,_ 134 F3d at 1442(citing _Martin v. Brown,63 F3d 1252, 1263 (3rd Cir. 1995))._

Other courts including District Courts however have permitted the imposition of a fine under Rule 37 without a finding of contempt.  See e.g., _Pereira v. Narragansett Machine Corp.,_ 135 F.R.D. 24, 26-28 (D. Mass. 1991); _Media Duplication Servs., Ltd. v. HDG Software, Inc.,_ 982 F.2d 1228, 1241-42 (1st Cir. 1991).

**Nature of the Penalty**

The District Court imposed sanctions approximately five months after the trial was concluded and the jury gave its verdict. Aplt. App. at  18, docket # 187.  The timing of the sanctions makes them almost by definition in the nature of criminal contempt.  Because

19

the District Court imposed the sanctions about five months after the trial, the sanctions were unavoidable because there was no way for  AECOM to avoid the sanctions by complying with an order of the court after the case has been tried.

In _Law_, the 25 percent surcharge above the complaining party's actual cost was not compensatory and it was also not avoidable by complying with the Court's order.  Thus, the Tenth Circuit found that it was criminal contempt in nature.  _Law v. Collegiate Athletic Ass'n,_ 134 F.3d at 1443.  The same analysis is applicable here.  The sanctions the District Court imposed were not a civil fine because AECOM could not avoid the fine by complying with the Court's order after the case had already been tried to a jury.  _See e.g., Hicks,_ 485 U.S. at 632, 108 S. Ct. at 1429-30; _NLRB v. Local 825 International Union of Operating Engineers,_430 F2d 1225, 1229-30 (3rd Cir. 1970).

The Tenth Circuit has recognized that coercive fines that may be avoided by obeying the Court's orders can also be considered criminal if the sanctionable conduct did not occur in the Court's presence and elaborate fact finding is required.  _Law v. National Collegiate Athletic Ass'n,_ 134 F.3d at 1443 (citing Bagwell 512 U.S. 821, 114 S. Ct. 2552).  Here, even if the fine were a coercive fine that  could have avoided by complying with the District Court's Orders (which it was not), the sanction would still be essentially a criminal contempt sanction because the alleged conduct did not occur in the Court's presence and elaborate fact finding was required.  Aplt. App. 1381- 1404.

**<u>Due Process Protections</u>**

The distinction between criminal and civil contempt is important because of the
procedural safeguards that must accompany criminal contempt.  If an order is partially
civil and partially criminal, the criminal aspect controls for purposes of review.  *Law*,
citing *Hicks*, 485 U.S. at 638 108 S.Ct. at 1433).   Criminal contempt is a crime in the
ordinary sense and criminal penalties may not be imposed on someone who has not been
afforded the protection that the Constitution requires of such criminal proceedings.
*Mellon v. Cessna Aircraft Co.*, 229 F.3d 1164 (10th Cir. 2000),(citing *Boss v. NCAA,* 134
F.3d at 1030)); *Parkehurst v. U.S. Department of Education,* Fed. App. 900, 904 (10th Cir.
Wyo. 2001).  When the procedures required for criminal contempt are not followed, the
contempt sanction must be reversed.  *Mellon v. Cessna Aircraft Co.*, 229 F.3d at 1164.
For example, AECOM requested an evidentiary hearing and the District Court denied
AECOM's request. Aplt. App. at 20, docket #211, #214.  The District Court did not
afford AECOM the process required for criminal contempt and the District Court's
sanctions order should be reversed.  *Law*, 134 F.3d at 1444.

## 2. THE DISTRICT COURT'S PRE-DISPOSTION TO IMPOSE SANCTIONS, IN PART, BECAUSE APPELLANT SOUGHT TO CONTINUE THE TRIAL SETTING WAS CLEARLY ERRONEOUS AND BORN OF ILL WILL WHICH IS ASCERTAINABLE FROM THE RECORD

The District Court's allowance of the late amendment and insistence on the June 22nd
trial date made it so that AECOM was required to complete discovery on four new tort
claims and punitive damages 12 business days after filing its answer to the new claims.

Aplt. App. at 862.  The District Court relied, in part, on AECOM's requests to continue the trial as support for its decision to impose sanctions characterizing AECOM's efforts to get more time to defend against the new tort and punitive damages claims as representing "a complete lack of diligence and cooperation" by AECOM. Aplt. App. at 1387.

AECOM's request to continue the trial was reasonable under the circumstances and was supported by case law.  AECOM made the District Court aware that Centennial had produced numerous additional documents, that the new claims presented complicated choice of law issues because Centennial was bringing the new tort claims under Colorado law while Massachusetts law applied to the original contract claims.  The District Court's decision to sanction AECOM for moving to continue the trial was not supported by the law.  Allowing a late amendment after the Final Pretrial Order had been entered is not favored.  *Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1208 (10th Cir. 2002)(citing Fed. R. Civ. P. 16(e); Tyler v. City of Manhattan, 118 F.3d 1400, 1403 (10th Cir. 1997)).

The District Court should have denied the late amendment rather than sanctioning AECOM for seeking a continuance.  See e.g., *Jones v. Young*, 2007 WL 2695621 (E.D. Ark. 2007)(too late to permit pleadings to be amended in ways that would substantially change the case to be tried and the amendment would deprive defendants of significant rights protected by the Federal Rules of Civil Procedure).

The District Court accepted Centennial's assertion that it was justified in seeking

22

to amend nearly a year after filing its original lawsuit and after the District Court's final pretrial order because AECOM had listed on a privilege log and not produced internal e-mail correspondence that was prepared after the parties dispute arose on January 30, 2009. Aplt. App. at 12, docket # 111. However, the District Court was given a wrong turn when it relied on those privileged e-mails as justification for Centennial's late amendment. The e-mails were appropriately placed on the privilege log and Centennial could not properly rely on them for any purpose including a very late amendment to its complaint. See, analysis of privileged e-mail correspondence below.

The District Court also erred when it sanctioned AECOM for resisting Centennial's late amendment to its complaint because AECOM's position. Centennial's amendment was indeed late and the record evidence demonstrated that Centennial was aware of the facts relating to its tort claims months before it sought to amend. Aplt. App. at 706. Nevertheless, the District Court did not carefully consider AECOM's position regarding the amendment or the continuance and instead concluded without support in the record that AECOM was stalling. Aplt. App. at 874, 876.

The District Court's Order Awarding Sanctions also contains clearly erroneous statements regarding the June trial setting. Judge Downes' Order suggests that Ms. Richard had said she had a conflicting trial in front of Judge Young when she did not. Aplt. App. at 1385. In fact Ms. Richard was scheduled to begin the trial on June 22 and Judge Downes, determined to have his June trial setting stick, apparently contacted

Judge Young and asked Judge Young to move the June 22 setting.  Aplt. App. at 497,

498.

### 3. THE DISTRICT COURT'S DECISION TO AWARD SANCTIONS OF $58, 361.51 BASED IN PART ON AECOM'S LISTING A PORTION OF ITS INTERNAL E-MAIL  CORRESPONDENCE WRITTEN AFTER THE DISPUTE AROSE ON ITS PRIVLEGE LOG WAS MANIFESTLY UNREASONABLE AND AN ABUSE OF DISCRETION

Centennial did not file any motions regarding the privilege log during the discovery

period.  Aplt. App. At 2-4.  The District Court awarded sanctions based, in part, on

Centennial's untimely motion to compel production of e-mail on the privilege log, filed

approximately three months after the discovery cut off.  Aplt. App. at 1387-88.  In fact

nearly six months had passed from October 2009 when Centennial originally received the

privilege log until March when Centennial filed its motion to compel production of the

privileged e-mail correspondence.  Aplt. App. at 638.

Centennial sought to compel the production of 239 e-mails that AECOM had listed

on its privilege log.  Aplt. App. at 28.  The District Court based its sanctions, in part, on

the Magistrate's April 12th order conclusion that a portion of the 239 e-mails were not

protected by a privilege.  The District Court's conclusions regarding these e-mails was in

error.

Centennial submitted a change order for approximately $553,000.00 and as a result

 a stop work order was issued for the project on February 11, 2009.  Aplt. App. at 29.

Centennial had consulted counsel by February 27, 2009.  Aplt. App. at 130.  AECOM

opposed the motion noting that it had already produced 2,710 documents to Centennial. Aplt. App. at 140.   AECOM also noted that in response to Centennial's request, it had again reviewed every document on the privilege log and had produced 117 pages of documents that originally had been listed on the privilege log and had prepared a third revised privilege log.  Aplt. App. at 141. AECOM also moved to strike Centennial's motion for Failure to Confer and sought a protective order pursuant to Rule 26(c)(1)(A). Aplt. App. at 222.  See also, Aplt. App. 208, 208 through 220.    The e-mails that AECOM listed on its privilege log were: 1) after the dispute arose on Jan. 30, 2009; 2) were copied to in-house counsel in preparation for an upcoming meeting within-house counsel; 3) prepared to secure legal assistance.  Aplt. App. at Page 222.   AECOM also sought a protective order as Centennial was seeking discovery of materials that were properly listed on a privilege log.  Aplt. App. at 225 (citing *Alabama v. Abott Laboratories, Inc.,* 2009 WL 692189).  AECOM attached redacted excerpts from February 2009 e-mails which demonstrated that the e-mails were written as part of obtaining legal advice:  "We will work through this with Rick and Legal" "Legal will ask" "Until I receive any guidance from Legal" "Assuming we're able to get we will be able to get John Mahoney (in-house counsel) on the phone early next week".  Aplt. App. 279 – 280.

On March 29, 2010 the Magistrate Judge found that he could not make a determination regarding the attorney client privilege or the work product doctrine based

25

on the information provided by the parties and ordered that AECOM submit the e-mails

for review on or before April 2, 2010.  Aplt. App. at 373.  On April 1, AECOM filed a

notice of submitting documents for *in camera* review demonstrating that it had submitted

the documents per the Magistrate's Order.  Aplt. App. at 388, 390.  On April 12, 2010 the

Magistrate denied AECOM's motion for a protective order concluding that because the

Court was ruling on the motion to compel, the protective order was moot.  Aplt. App. 417

– 418.  The Magistrate Judge denied Centennial's motion to strike for failure to confer

finding that it was also moot.  Aplt. App. 419, 421.  The Magistrate Judge's conclusions

regarding the e-mails was erroneous.  The Magistrate Judge accepted the date that

Centennial suggested, May 8, 2009, the date that Centennial filed its complaint, as the

controlling date for purposes of whether the e-mails privileged. Aplt. App. at 424.  The

Magistrate Judge concluded that the work product doctrine did not apply to e-mails that

AECOM had listed on its privilege log as communications in anticipation of litigation

under Fed. R. Civ. P. 26(b)(3).  Aplt. App. at 426.  The Magistrate Judge also made the

following finding "After careful review of each, individual e-mail, submitted by

defendant for *in camera* review, the Court finds most of the e-mails defendant claims to

be protected by attorney-client privilege are, in fact, protected.  Aplt. App. at 431.

The Magistrate Judge also found that there were some e-mails that were listed as

attorney-client privileged that it did not consider attorney-client privileged.  Aplt. App. at

431 through 432.  The Magistrate Judge found that because AECOM's in-house counsel

26

also acts as a vice president, e-mails that in-house counsel Mahoney was copied on that were written after the dispute arose between the parties were not protected by the attorney-client privilege.  Aplt. App. at 432.  The Magistrate Judge then listed approximately 12 e-mails or e-mail threads that, in its view, were not subject to the attorney-client privilege.  Aplt. App. 432 through 434.  The Magistrate Judge ordered that the e-mails it concluded were not privileged be produced by April 16, 2010.  Aplt. App. at 436.

On April 16,  AECOM filed a notice that it had produced the e-mails that the Magistrate Judge found to be non-privileged to opposing counsel.  Aplt. App. at 470 to 471.

Centennial contended that these privileged documents disclosed the basis of new claims and they disclosed "for the first time a scheme of deliberate misconduct initiated by AECM against Centennial[.]"  Aplt. App. at 639.  The District Court , at Centennial's urging, relied on these e-mails as the basis for Centennial to amend its complaint after the final pre-trial order.  This alleged scheme of "deliberate misconduct" was submitted to the jury and rejected by the jury.  Aplt. App. at 18, Docket No. 187 and Aplt. App. 20 at Docket 216.

Despite producing the internal e-mail correspondence by April 16, 2010 as ordered by the Magistrate Judge, the District Court accepted Centennial's claim that AECOM was somehow in violation of the Magistrate's April 12th order.  AECOM sent an e-mail along

with the e-mails asking Centennial's counsel to agree that if it appealed the Magistrate's order and the documents were found to be privileged that Centennial agreed that the privilege would not be waived.  Aplt. App. at 8.  The District Court found that by sending the e-mail along with its production of the e-mails that AECOM's "compliance was at best reluctant and conditional."  Aplt. App. at 1388.  In addition, the District Court found that AE Com had violated the Magistrate's order because one page of the e-mail chains was missing.  Although AECOM produced the page when the omission was brought to its attention, the District Court found that not producing page—of the e-mails was "a violation of court's order."  Aplt. App. at 1389.

Centennial's counsel was seeking sanctions for the failure to produce documents that were indeed created in anticipation of litigation and should have been excluded from production and from evidence.  The District Court did not independently examine these assertions by Centennial's counsel or the record and instead accepted and signed the clearly erroneous Proposed Order Awarding Sanctions prepared by Centennial's counsel.  Aplt. App at1486 and a clearly erroneous order resulted.

The District Court accepted the Magistrate Judge's legal conclusions on this issue which were incorrect.  By its own terms, Rule 26(b)(3) applies to documents prepared by a party himself, a consultant to a party, and to an agent.   In a recent decision considering these issues: _Laney ex rel., Laney v. Schneider Nat. Carriers Inc._, 259 F.R.D. 562, 565 (N.D. Okla 2009):

"Rule 26(b)(3) does not limit work-product protection only to the work of lawyers, it includes consultants, insurers and others.  Under the current version of the Rule, whether a document is protected as work product, depends on the motivation behind its preparation rather than who prepared it."  *See also, Haigh v. Matsushita Elec. Corp. of America*, 676 F.Supp. 1332, 1357 (E.D. Va. 1987): "Defendants are living in the past, and are presenting a pre-1970 argument. *See also, Aiken v. Texas Farm Bureau Mutual Insurance Co.*, 151 F.R.D. 621 (E.D. Tex. 1993).

It is the parties' motivation in preparation of the work product, which is determinative.  If the document or thing were prepared in anticipation of litigation, and not in the ordinary course of business, the protection should apply.  *See, Laney ex rel. Laney, above,* and *Ilardi v. Domestic Violence Intervention Services, Inc.*, 2010 WL 830272 (N.D. Okla. 2010).

These e-mails, beginning on February 19, 2009, to and from 's employees clearly indicate a critical breach in the normal business relationship between the two parties and that legal counsel are being consulted.

## 4.  THE DISTRICT COURT'S AWARD OF DOUBLE SANCTIONS WAS ARBITRARY AND CAPRICOUS BY IMPOSING MONETARY SANCTIONS AFTER IMPOSING EVIDENTIARY SANCTIONS

The record also demonstrates that the District Court imposed evidentiary sanctions and that various discovery issues ultimately were presented to the jury.  Aplt. App. at 1051, 1166, 1179-81.  The District Court abused its discretion by imposing multiple sanctions.  The District Court under Rule 37 has a responsibility to ensure that there is a close connection between the conduct and sanction.  Rule 37(b); Fed. R. Civ. P. Any

sanction must be proportionate to the offense and commensurate with the principles of

restraint and dignity inherent in judicial power.  As part of this, the District Court must

consider the usefulness of more moderate penalties rather than imposing dual penalties or

more than one penalty to speak to the same conduct.  Even if AECOM's actions regarding

the April 12th and April 27th discovery orders was sanctionable (which the record

indicates that it was not) the District Court erred by imposing multiple sanctions. In

addition to the attorney's fees that the District Court awarded, the District Court also

imposed evidentiary sanctions on AECOM.

     During the trial the District Court allowed the admission of correspondence that

AECOM believed was privileged or a part of settlement negotiations.  AECOM objected

to the introduction of this material.  In response, the District Court indicated that the

Magistrate Judge had already ruled on these issues as part of the Magistrate's ruling on

the email privilege issues.  Aplt. App. at 1160.  However, the Magistrate Judge had ruled

on discoverability not admissibility.  The District Court deferred decided, in essence, that

because the Magistrate Judge had allowed production of the e-mails and settlement

documents the evidence would also be admissible at trial.  This compounded the error.

Then in response, during the examination of AECOM's witness, AECOM attempted to

introduce testimony relating to these same events before the lawsuit was filed and

Centennial's counsel objected.  Aplt. App. at 1165-66.  The District Court imposed an

additional sanction by making a one-sided ruling in ruling that that AECOM could not

introduce any such evidence even though Centennial had already introduced such evidence.  Aplt. App. at 1165, 1166.

The District Court also allowed Centennial's counsel to argue to the jury regarding its contention that AECOM had wrongfully failed to produce Mr. Degner's  notes from February 2009 as a basis for tortious conduct.  Aplt. App. at 1181, 1269.  Thus, AECOM was penalized during trial in by the District Court's evidentialry sanctions and the District Court's award of further monetary sanctions was an abuse of discretion.

The District Court went further and imposed an additional sanction.

During trial, Centennial introduced the parties contract into evidence.  As further evidentiary sanctions the District Court ruled that AECOM could not argue certain provisions from the contract including an anti-waiving clause to the jury.  In other words even though the contract was an exhibit in evidence and had been admitted in evidence the District Court would not allow AECOM's counsel to comment or argue these provisions to the jury from the contract which was an admitted document in evidence. Aplt. App. at Page 1180.  Thus, the District Court continued to impose evidentiary sanctions and therefore this made its Award of additional monetary sanctions an abuse of discretion and should be an additional reason that the judge's order…….

*5.* **THE DISTRICT COURT'S DECISION TO AWARD A SANCTION OF $58,361.51 IN ATTORNEY'S FEES, BASED ON COURSE OF CONDUCT DISCOVERY AND A PORTION OF MARK DEGNER'S NOTES WAS CLEARLY ERRONEOUS**

The District Court signed and accepted Centennials Proposed order Granting Sanctions and therein concluded that AECOM had violated two discovery orders issued by the Magistrate Judge—the April 12th Order (discussed above) and the April 27th Order. Aplt. App. 1486-1502. Although Centennial raised, and the District Court considered, other issues3, the two main issues relate to the April 27th Order that the District Court relied on were 1) course of conduct discovery and 2) production of Mark Degner's noted from Feb. 2009 through April 2009 after the dispute arose. Aplt. App. 1389-1394.

A hallmark of Centennial's proposed order awarding sanctions that the District Court signed was its assertion that AECOM violated a Court Order. Aplt. App. 1498. The contrary is also true, if the record demonstrates that AECOM obeyed the April 12th and April 27th orders. An award of fees is not permitted under Fed. R. Civ. P. 37(b)(2)(c).

## COURSE OF CONDUCT BETWEEN THE PARTIES ON PRIOR PROJECTS

On March 26, 2010 Centennial filed a motion for sanctions to compel regarding course of dealing discovery. Aplt. App. at 281. Centennial claimed that AECOM should be sanctioned for failing to provide, with its initial disclosures in August 2009, witnesses or documents from other projects. Aplt. App at 281.

---

3 AECOM addressed each of those issues as well and those portions of the record are included.

To begin with the District Court erred in granting and awarding sanctions on the basis of untimely motion to compel.  Any motion to compel should have been filed before the December 18th, 2009 discovery deadline.  See, _Continental Industries, Inc. v. Integrated Logistics_, 211 F.R.D. 442 (N.D. Okla. 2002);  _Butter v. Benson_, 193 F.R.D. 664, 666 (D. Colo. 2000).  _JOM, Inc. v. Adell Plastics, Inc._, 193 F. 3d 47, 51 (1st Cir. 1999).  _Lobato v. Ford_, 2007 WL 3342598 (D. Colo. 2007).  The District Court simply said that the circumstances of these cases were distinguishable and did not include any supporting case law for its decision.  Aplt. App. at 689.

The District Court's Order contains numerous erroneous conclusions and characterizations that are contrary to the record.  Aplt. App. at 1384, 1391, 1392, 1398, 1399, 1409, 437, 527.

The District Court's conclusions in the Order also ignore that AECOM's motions to exclude extrinsic evidence regarding the parties' course of dealing and that the District Court had previously ruled that the contract contract was clear and unambiguous which made evidence about other projects inadmissible under Massachusetts ale.  Aplt. App. at 1405, 1419.  The Motion to Compel Course of Dealing Discovery was unnecessary and not a basis for fees or sanctions because AECOM agreed to provide the documents without an order from the Court; Aplt. App. at 392; and because Centennial itself had information about the prior projects because obviously Centennial worked on those projects alongside AECOM.  Aplt. App. at 391.

The Magistrate Judge ordered:

"NOW, THEREFORE, IT IS ORDERED that Plaintiff's Motion for Sanctions to Compel Based on Defendant's Failure to Provide Course of Dealing Discovery be , and the same is hereby, GRANTED in-part and DENIED in part, as set forth herein. Defendant shall fully and adequately respond to *Plaintiff's First Request for Productions of Documents, Requests for Admissions and Interrogatories* and *Plaintiff's Second Set of Requests for Admissions and Interrogatories to Defendant.* Defendant shall also supplement its *Initial Disclosure* to include the subjects of information each potential witness may possess. Defendant must submit the above on or before May 10, 2010. It is FURTHER ORDERED that Plaintiff's request for sanctions, costs and attorney's fees is DENIED without prejudice". Aplt. App. At 496.

In other words, if AECOM did not fully and adequately respond to these discovery requests, the Magistrate Judge would consider awarding fees for securing the course of conduct discovery. *Id.* AECOM did obey the Magistrate Judge's Order of April 27th. Aplt. App. at

The Magistrate Judge also ruled that because the trial had been moved from April to June, Centennial had sufficient time to cure any prejudice and get the necessary information before trial. Aplt. App. at 491. This finding by the Magistrate is pivotal. Upon the Magistrate's finding that that any prejudice would be cured by the production of this information before trial, and AECOM's producing the information, there was no prejudice and no valid legal basis for Judge Downes award of sanctions.

On May 11, 2010 AECOM filed a Notice of Compliance which included:

(1) AECOM's supplemental responses to Centennial's first discovery request;

(2) AECOM's supplemental responses to Centennial's second discovery requests; and

(3) AECOM's fourth supplemental initial disclosures. Aplt. App. at 527-28 and at 530-

34

636.  Despite AECOM's production of the course of conduct discovery, the District Court awarded sanctions based on a conclusion that AECOM had included non-responsive and over-inclusive bates range references in its supplemental response and transfer.  Aplt. App. at 1391.

The premise for Centennial's supplemental motion for sanctions was AECOM's production on June 9, 11 and 15 of additional documents including additional handwritten notes by Mark Degner.  Aplt. App. at 939-940.  In the Fall of 2009 AECOM had produced handwritten notes taken by Mr. Degner during the project and on June 15th, during Mr. Degner's second deposition, AECOM produced notes that Mr. Degner had taken from February through April 2009.  Aplt. App. at 940.  In examining the date of the notes now, it appears that these notes were prepared after the dispute arose in anticipation of litigation and may have been held and should have been withheld as privileged. Nevertheless, AECOM produced Mr. Degner's notes.  Aplt. App. 944-957.

Centennial was aware that Mr. Degner's notes from February 2009 through April 2009 had been listed on AECOM's original privilege log and were likely originally withheld back for that reason.  Aplt. App. at 941.

Instead of acknowledging that Mark Degner's notes had now been produced and might have even been prepared in anticipation of litigation, Centennial suggested to the District Court that Mr. Degner's notes and production of any other documents had been the subject the Magistrate Judge's April 27 Orders on course of conduct and that AECOM

had now deliberately violated the Court's April 27, 2010 order. Aplt. App. at 941. This incorrect characterization then appears in the District Court's Order Granting Sanctions. Aplt. App. at 1392, 1393, 1394. The Magistrate Judge's April 27th order as set forth above required AECOM to its course of conduct discovery by May 11, 2010 which AECOM did. Aplt. App. at 527-654.

Whether Mr. Degner's notes from February 2009 forward were properly held as prepared in anticipation of litigation or inadvertently produced late, what is true is that the District Court's conclusion that AECOM's production of Mr. Degner's notes constituted a willfull violation of the Magistrate Judge's April 27th Order is in error. Aplt. App. at 19.

In its Order the District Court said it would afford Centennial the option to demonstrate that Centennial had to prove at trial matters that should have been admitted in response to a request for admission. Aplt. App. at 1052. That proof never came and the failure to admit cannot be used as a basis for the District Court's sanctions on June 17, 2010.

Under Rule 37(b)(2)(A) the District Court has discretion to impose a sanction "that is just and related to the particular claim which was at issue in the Order to provide discovery." _Brigham Young University v. Pfizer, Inc._, 262 F.R.D. 637, 643 (D. Utah 2009). But the District Court's discretion is "limited in that the chosen sanction must be both just and related to the particular claim which was at issue in the Order to provide discovery." _Pfizer_, 262 F.R.D. at 643 (citing _Proctor and Gamble Company v. Haugen_,

427 F. 3d 727, 738 (10th Cir. 2005)).  The District Court's Dec. 6th Order Awarding

Sanctions does not meet this standard in that it awards sanctions broadly based on

adjectives and does not properly assign amounts for specific claims that were at issue in

the April 12th or April 27th Orders.  The District Court's Order Awarding Sanctions of

$58,361.51 should also be reversed because it is based on findings that AECOM willfully

disobeyed discovery orders of the Court when the record demonstrates that AECOM

obeyed the Courts orders .

The Tenth Circuit has stated that a District Court should three factors in

making findings under Rule 37:  1) the degree of actual prejudice to the Plaintiff; 2) the

amount of interference with the judicial process; and 3) the culpability of the litigant.

*Simon v. Ford Motor Company*, 165 F.R.D. 653 (N.D. Oklahoma 1995)(citing *Ocelot Oil*

*Corporation v. Sparrow Industries*, 847 F. 2d 1458, 1465 (10th Cir. 1988)).  The District

Court did not carefully consider these factors.  Aplt. App. at 1381.

In order to award attorney's fees the Court must find that party has acted in bad

faith.  *Simon v. Ford Motor Company*, 165 F.R.D. 650, 656 (N.D. Oklahoma 1996).

However, the District Court's Order expressly provided that AECOM's conduct on fell

short of bad faith.  Aplt. App. at 1404.

"Discretion" imports that the action should be taken within reason and good

conscience in the interest of protecting the rights of both parties and serving the ends of

justice.  *Waldrop v. Weaver,* 702P.2d 1291, 1294 (WYO. 1985).  The District Court's

Dec. 6, 2010 order Awarding Sanctions was an abuse of discretion.

### 6. THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT AWARDED ATTORNEYS FEES THAT WERE NON-COMPENSATORY AND ATTORNEY'S FEES THAT APPELLEE HAD NOT INCURRED UNDER ITS FIXED FEE AGREEMENT

The District Court erred when it rewarded Centennial's counsel and awarded more fees than they charged their client. Aplt. App. at 1404.

In awarding fees beyond the fixed fee, the District Court relied on *Dixon v. Comm'r*, 132 T.C. 55, 81 (2009). Aplt. App. at 1399. However, that case involved a specific statute on fees that is not applicable here. The District Court should not have awarded any monetary sanctions. If the District Court was intent on awarding sanctions the amount it awarded was excessive and not supported by the law. *Dodd Insur. Services Inc. v. Royal Insur. Company of America*, 935 F.2d 1152 (10th Cir.(1991)). The District Court awarded substantial fees for numerous tasks that were not related to discovery and certainly not related to supposed violations of the Court's Order of April 12th and April 27th. For example, Aplt. App. at 1455, 1456, 1462, 1467, 1475. Any award of fees would be unjust in these circumstances. Fed.R.Civ.P. 37(a)(5)(A).

Instead of awarding fees as sanctions, the District Court should have denied Centennial's motions because Centennial did not confer and resolve the issues. As the Third Circuit Court of Appeals noted "with respect to discovery disputes collegiality and professionalism can obviate unnecessary Court intervention, needless expense and fees

38

for clients, and protracted legal proceedings.  Zealous advocacy on behalf of one's client does not excuse a belligerent and uncompromising approach to the discovery process." *Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc.,* 339 F.3d 180 (3rd Cir. 2003). In *Naviant Marketing* Solutions, the Court found that counsel was overzealous and unreasonable in his approach to discovery.  It found that Plaintiff's counsel did not confer with Defense counsel in good faith prior to a motion to compel or a motion for sanctions.  As a result, sanctions were not proper.  *Naviant Marketing Solutions*, 339 F.3d at 182. Here, as in *Naviant,* Centennial's counsel "in its zeal, proliferated and complicated the discovery disputes through numerous and lengthy submissions and with an approach best characterized as 'shoot first and find out later'."  The District Court erred when it endorsed and relied on the characterizations offered by Centennial's counsel instead of the record in awarding sanctions.

## CONCLUSION

Decisions and orders that are based on careful independent thought and the record are one of the hallmarks of our judicial system.  Judge Downs' Order of December 6, 2010 lacks these essential ingredients and should be reversed.

The District Court's Dec. 6, 2010 Order Awarding Sanctions was arbitrary, capricious, and manifestly unreasonable.  Only this Court has the power to correct that injustice.   The District Court's December 6, 2010, Order Awarding Sanctions and Additional Sanctions in the amount of $58, 361.51 should be reversed.

RESPECTFULLY SUBMITTED this 2nd day of May, 2011.


_____/s/_____
Andrea L. Richard
*Attorney for Appellant , Inc.*


**ORAL ARGUMENT STATEMENT**

Oral argument is requested.  AECOM Inc. has done its best to describe the proceedings below.  However, oral argument is the only way it will have an adequate opportunity to describe the events that took place in the District Court.  Oral argument is necessary in order to describe the overall impact of the erroneous rulings by the District Court.  Thus, oral argument is necessary in order for  AECOM to properly present its claims to this Court.

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)(7)(B)

The undersigned hereby certifies that this brief complies with the type-volume limitation contained in Rule 32 of the Federal Rules of Appellate Procedure and 10th Cir. Rule 32.  Specifically, this brief contains no more than 14,000 words.


_____/s/_____
Andrea L. Richard
THE RICHARD LAW FIRM, P.C.

## CERTIFICATE OF SERVICE

     I hereby certify that on May 2, 2011, I served a copy of the Appellant/Petitioner's Opening Brief to Donald Schultz, via the last known address/e-mail address, by ECF/CM.


May 2, 2011                     _____/s/_____
Date                                         Signature: Andrea L. Richard